Sun Oil Company of Pennsylvania, Appellant, *v.* City of Upper Arlington, Appellee.

[Cite as Sun Oil Co. v. Upper Arlington (1977), 55 Ohio App. 2d 27.]

(No. 77AP-541—Decided December 20, 1977.)

*Messrs. Schwenker & Reeves* and *Mr. Bruce E. Reppert,* for appellant.

*Mr. Robert J. Holland,* city attorney, for appellee.

Whiteside, J., Plaintiff appeals from a judgment of the Franklin County Court of Common Pleas and raises four assignments of error, as follows:

"1. The trial court erred in holding constitutional zoning for solely aesthetic purposes; the judgment is contrary to law.

"2. Judgment for the appellee was against the manifest weight of the evidence.

"3. The court's holding that vested non-conforming uses may be constitutionally prohibited is contrary to law.

"4. The judgment of the trial court sustaining the classifications established by the Upper Arlington sign ordinance is contrary to law."

By this action, plaintiff seeks a declaration that Chapters 1145 and 1191 of the Upper Arlington City Code are unconstitutional as they affect plaintiff and an injunction against the enforcement thereof with respect to plaintiff's existing free-standing signs at service stations in Upper Arlington.

Defendant filed a counterclaim, seeking a declaration that Chapter 1145 of the Upper Arlington City Code is constitutional and an injunction requiring plaintiff to remove its signs which are in violation thereof.

The trial court found Chapter 1145 of the Upper Arlington City Code to be constitutional, denied plaintiff injunctive relief, and granted injunctive relief to defendant, requiring plaintiff to remove its freestanding signs found to be in violation of the Upper Arlington Zoning Code.

Plaintiff operates several service stations in the city of Upper Arlington, in connection with which there are on the service station premises free-standing signs identifying the product sold on the premises, all of which were properly and legally erected prior to the adoption of Chapter 1145 of the Upper Arlington Zoning Code.

Chapter 1145 of the Upper Arlington Zoning Code regulates display signs and outdoor advertising. Section 1145.-05(4) requires all display signs to be mounted on the building housing the establishment advertised by the sign, except as otherwise provided in the ordinance. Section 1145.05(6) permits the erection and maintenance of freestanding signs upon the obtaining of a special permit from the Board of Zoning Adjustment in accordance with the provisions thereof. Plaintiff's signs apparently do not meet such standards. The ordinance in question was enacted subsequent to the erection and maintenance of the signs in question by plaintiff, and said ordinance, therefore, rendered the signs valid nonconforming uses under the Zoning Code.

Section 1145.04 of the Zoning Code provides that nothing in Chapter 1145 requires the removal or discontinuance of any legally existing permanent display sign attached to

realty except as otherwise provided in the ordinance. Section 1145.05(5) of the Zoning Code provides in pertinent part that:

"* * * Such [free-standing] signs heretofore lawfully erected and maintained and now in place may be maintained *until* January 1, 1976, or *until* depreciated for Federal Income Tax purposes on the books of the owner, whichever is later, *but not later, in any case, than April 7, 1981.* * * *" (Emphasis added.)

By virtue of this provision, defendant contends that plaintiff is required to remove the signs in question, which have been amortized for income tax purposes.

The first two assignments of error relate to the basic constitutionality of the zoning ordinance regulating signs in the city of Upper Arlington. Plaintiff contends that the ordinance in question is an attempt to zone for aesthetic purposes. Defendant contends that aesthetic considerations are appropriate in enacting zoning regulations, such as the one here in question.

It has been the firmly established law of Ohio that the police power cannot be exercised for solely aesthetic purposes, as stated in the third paragraph of the syllabus of *Wondrak* v. *Kelley* (1935), 129 Ohio St. 268, as follows:

"Aesthetic reasons alone, unrelated to the requirements of the public health, safety or welfare, will not justify the exercise of the police power."

This principle was further explained in the opinion of *Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St. 654, at pages 661-662, as follows:

"The police power, however, is based upon public necessity. There must be an essential public need for the exercise of the power in order to justify its use. This is the reason why mere aesthetic considerations cannot justify the use of the police power. * * * Successful city councils might never agree as to what the public needs from an aesthetic standpoint, and this fact makes the aesthetic standard impractical as a standard for use restriction upon property. The world would be at continual seesaw if aesthetic considerations were permitted to govern the use of the

police power. We are therefore remitted to the proposition that the police power is based upon public necessity, and that the public health, morals, or safety, and not merely aesthetic interest, must be in danger in order to justify its use."

Defendant refers to more recent cases, contending that they indicate aesthetic consideration may be the primary motivation for zoning legislation. *Ghaster Properties, Inc.*, v. *Preston* (1964), 176 Ohio St. 425, cited for this proposition, related to the maintenance of billboards along interstate highways. A fair reading of that decision, however, indicates that aesthetic considerations were secondary, with the primary factor being the safety and convenience of motorists using the highway. In *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, the Ohio Supreme Court found statutes requiring junkyards to be obscured from the ordinary view of persons passing upon highways constitutional, although they are based upon aesthetic considerations. The explanation for this conclusion as set forth in the opinion by Justice Brown, at page 132, is as follows:

"We think that aesthetic considerations can support these statutes, because interference with the natural aesthetics of the surrounding countryside caused by an unfenced or inadequately fenced junk yard is generally patent and gross, and not merely a matter of taste. * * *"

Similarly, in *P. & S Investment Co.* v. *Brown* (1974), 40 Ohio App. 2d 535, it is stated, at page 543, as follows:

"We hold that when the appearance of a use in violation of permitted uses in a particular zone is in such gross contrast to the permitted uses of such zone as to be patently offensive, the order of a township board of zoning appeals to prohibit such use is a valid exercise of the police power although such order is based upon aesthetic consideration."

Section 1145.05(6) of the Upper Arlington Zoning Code contains both aesthetic and nonaesthetic considerations for the granting of a permit to erect and maintain a free-standing sign. The ordinance contains height limitations, size limitations, set-back limitations, color limitations,

safety limitations, and number limitations, as well as aesthetic considerations. The ordinance requires that a free-standing sign be necessary to the conduct of the activity on the site, that an attached sign would not be in harmony with the building thereon, that the free-standing sign be in harmony with the buildings on the site, that such sign not detract from the appearance of the general neighborhood, and refers to compatibility of the sign with the surrounding neighborhood. In *Buckley, supra,* at page 133, it is stated expressly that: "This holding is not to be construed as a blanket approval of all regulation based upon aesthetics." Broadly construed, the ordinance in question would be in conflict with *Wondrak, supra.* However, it is not necessary to so broadly construe the ordinance, and the aesthetic consideration set forth therein can, and are, construed to be limited to situations where the maintenance of a free-standing sign would be in such gross contrast to the surrounding area as to be patently offensive to the surrounding neighborhood, rather than merely a matter of taste. When so construed and limited, the ordinance in question is constitutional and constitutes a proper exercise of the police power. Accordingly, the first two assignments of error are not well taken.

By the fourth assignment of error, plaintiff contends that the classifications contained in the zoning ordinance with respect to signs are arbitrary and capricious. The ordinance distinguishes between free-standing signs and signs which are mounted on the building. The latter are permitted, but the former are permitted only by obtaining a permit from the Board of Zoning Adjustment. Although, with respect to the aesthetic considerations, there may be some question as to whether free-standing signs are any more offensive than signs on a building, from the totality of the ordinance, it appears to be at least reasonably debatable as to whether or not a permit should be required from the Board of Zoning Adjustment prior to the erection of a free-standing sign, but not with respect to signs mounted on a building. The set-back, height, and safety considerations are particularly appropriate to free-standing

signs. A free-standing sign is more likely to constitute a traffic hazard or contribute to traffic problems than a sign mounted on building. In light of such factors, we do not find the classification to be unreasonable or unconstitutional. Accordingly, the fourth assignment of error is not well taken.

The third assignment of error raises the issue of whether the city of Upper Arlington may eliminate valid, nonconforming uses of premises solely because the structure involved has been amortized for tax purposes, or has existed for ten years after enactment of the ordinance.

Similar attempts were made by the city of Akron and rejected by the Supreme Court in *Akron* v. *Chapman* (1953), 160 Ohio St. 382, and *Akron* v. *Klein* (1960), 171 Ohio St. 207. The second paragraph of the syllabus of *Chapman* states, as follows:

"The right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or *property* without due process of law."

Similarly, in *Gates Co.* v. *Housing Appeals Bd.* (1967), 10 Ohio St. 2d 48, the Supreme Court specifically held in the syllabus, as follows:

"In the absence of a determination that the continued use of improved real property without conforming to building standards subsequently adopted would constitute a nuisance, improvements necessary to comply with the new standards may not constitutionally be compelled by a public agency against the private owner of such property."

See, also, *Burt Realty Corp.* v. *Columbus* (1970), 21 Ohio St. 2d 265. There is no contention that the free-standing signs in question constitute a nuisance, nor has the city of Upper Arlington determined or declared them to be so. Furthermore, it is conceded that the evidence in question is a zoning ordinance.

Defendant and the trial court relied upon *Ghaster Properties, Inc.*, v. *Preston, supra,* as a basis for finding constitutional the provisions of the Upper Arlington ordinance for the elimination of otherwise valid, nonconforming uses. First, *Ghaster* did not involve a zoning ordinance. Furthermore, the statute in *Ghaster* permitted the continuation and use of the very types of signs herein involved— namely, signs identifying the business conducted or products sold on the property on which the sign is located. The statute in *Ghaster* prohibited billboards visible from the newly constructed interstate system, a limited access highway. It prohibited use of the newly constructed highway for advertising purposes through the erection of billboards on adjacent property. The statute also provided for the elimination of existing billboards visible from the interstate system but allowed several years for the removal thereof. Significantly, in *Ghaster,* use of adjacent property to advertise to motorists upon the newly constructed limited access interstate system was found to be constitutional with respect to existing advertising billboards; the property involved, the billboards, was not destroyed as noted in the opinion by Chief Justice Taft at pages 440-441, as follows:

"Each of these signs was in existence before enactment of these statutes. However, there is no evidence disclosing what loss Ghaster will suffer if compelled to remove them. There is nothing to indicate that they ever became fixtures so as to be a part of the real estate. They can apparently be used in other locations where their use will be lawful. * * * There is nothing to indicate what expense would be involved in moving them to such locations. There is not even any evidence tending to prove what, if any, dollar loss Ghaster will suffer if these statutes are enforced against these seven signs. * * *

"It may be that a zoning regulation may not interfere with an existing use of property. * * * However, a general police regulation may. * * *

"The reason given for decisions protecting the continuation of nonconforming uses is that, except for its lo-

cation in a particular zone, the nonconforming use would be lawful and not a nuisance. However, the statutes involved in the instant case make the use of land for billboard purposes within 660 feet of an interstate highway unlawful and a nuisance. Unlike in the zoning cases, their continued use for such purposes will not merely be a lawful use that does not conform with a zoning restriction but a use that is unlawful and a nuisance either in or out of any zoning district * * *."

In other states, there is a conflict of authority as to the validity of amortization provisions with respect to nonconforming uses. See Annotation, *Validity of Provisions for Amortization of Nonconforming Uses*, 22 A. L. R. 3d 1134. Generally, courts which allow amortization of nonconforming uses do so only upon a determination that the provisions are reasonable and based upon a balancing of the public gain against the private loss. The Supreme Court in the two Akron cases, *Chapman* and *Klein, supra,* rejected amortization provisions. In *Buckley, supra,* with respect to junkyards, no amortization was required; rather, the statute was immediately applicable to the nonconforming use because of the existence of what is tantamount to a public nuisance, although predicated upon aesthetic considerations, constituting patent and gross interference with the natural aesthetics of the surrounding countryside. In *Gates, supra,* it was held that building standards cannot be applied to existing property unless continuation of the property in its present condition constitutes a nuisance. Similarly, in *Ghaster,* the Supreme Court seemingly placed great weight upon the fact that the maintenance of billboards constitutes a nuisance with respect to users of the interstate highways. In the sixth paragraph of the syllabus of *Ghaster,* the Supreme Court specifically stated that weight may be given not only to promoting public safety on a public highway but also to "promoting the comfort, convenience and peace of mind of those who use the highway by removing annoying intrusions upon that use." Furthermore, the eleventh paragraph of the syllabus of *Ghaster* approving application of the statute to billboards in existence at the time of the enactment was not predicated

upon amortization. Additionally, the statute in question, R. C. 5516.04, specifically declared the billboards to be both a public and private nuisance.

From the foregoing, it would appear that police regulations adopted by a municipality requiring improved real property to conform to specified standards may not be applied to preexisting uses of such property unless the continued use of the improved property without conforming to the newly enacted standards would constitute a nuisance. Where such continued use constitutes a nuisance, the newly enacted statute may be applied prospectively to property, even though it has previously been used inconsistently therewith, without any requirement for amortization. See *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103.

Amortization for income tax purposes does not necessarily bear any relationship to the true value of property, which may have substantial value even though completely amortized for income tax purposes. Although there is no evidence herein as to the value of the signs involved, there is evidence of their value to the business conducted on the premises, and the trial court specifically found that "free-standing signs are advantageous to service stations."

It is unnecessary, however, to determine herein whether or not a police regulation may eliminate preexisting and otherwise valid, nonconforming uses by amortization of such use, inasmuch as, with respect to zoning ordinances, the General Assembly has legislatively determined to the contrary by the enactment of R. C. 713.15, which provides, in part:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of such land shall be in conformity with sections 713.01 to 713.15, inclusive, of the Revised Code. * * *"

Clearly, the Upper Arlington ordinance for amortiza-

tion of nonconforming uses is in conflict with R. C. 713.15, which specifically allows preexisting nonconforming uses to be continued until voluntarily discontinued for two years or more.

Section 3, Article XVIII, Ohio Constitution, specifically authorizes municipalities to adopt "such local police, sanitary and other similar regulations, as are not in conflict with general laws." Defendant contends that R .C. 713.15 is not a general law within the contemplation of this constitutional provision. We disagree.

Defendant contends that R .C. 713.15 is a law restricting the right or manner of municipal exercise of the police power. It is not. Rather, R. C. 713.15 confers rights upon persons specifically allowing the continuation of existing uses, which are not in conformity with zoning ordinances, removing the application of R. C. 713.13 to such uses. This section provides:

"No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. * * *"

The basic test for determining whether an ordinance is in conflict with general law is set forth in the second paragraph of the syllabus of *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, as follows:

"In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, and vice versa."

The Upper Arlington ordinance prohibits that which the state law (R. C. 713.15) specifically permits and, therefore, is in conflict with state law under the *Sokol* test. R. C. 713.15 read *in pari materia* with R. C. 713.13, rather than regulating the power of municipalities, sets forth a rule of conduct for citizens generally and, thus, is a police regulation of the state and constitutes a general law within the definition set forth in the third paragraph of the syllabus

of *Village of West Jefferson* v. *Robinson* (1965), 1 Ohio St. 2d 113.

Defendant further contends that R. C. 5516.09 supersedes R. C. 713.15 and that the Upper Arlington ordinance is not inconsistent with the former section. We disagree. R. C. Chapter 5516 relates to billboards maintained in proximity to the interstate system or primary system of the state highway system and does not otherwise regulate signs. R. C. 5516.02(C), 5516.06(C), and 5516.061(C) specifically provide that they do not apply to signs such as are herein involved. R. C. 5516.09 provides that the provisions of R. C . Chapter 5516 do not invalidate municipal ordinances which are not less restrictive than regulations promulgated by the director. Nothing in R. C. Chapter 5516 modifies or repeals the provisions of R. C. 713.15 with respect to nonconforming uses under zoning ordinances. Rather, not only does the chapter not apply to signs such as are herein involved, but R. C. 5516.07 specifically provides that nonconforming advertising devices located in zoned or unzoned commercial or industrial areas may be maintained. The ordinance herein involved is not one attempting to regulate advertising devices adjacent to the interstate system or the primary system of the state highway system. Rather, the ordinance regulates free-standing signs, whether or not they are adjacent to the state highway system.

Furthermore, R. C. 5516.09 merely provides that the provisions of that chapter do not invalidate certain municipal ordinances but in no way authorizes a municipality to enact a zoning ordinance eliminating preexisting nonconforming uses contrary to the provisions of R. C. 713.15.

The provisions of the Upper Arlington ordinance for the amortization of preexisting otherwise valid, nonconforming uses is in direct conflict with R. C. 713.15, and, accordingly, pursuant to Section 3, Article XVIII, Ohio Constitution, the provisions of the state law prevail over the provisions of the municipal ordinance. Since the state law permits the continuation of the preexisting nonconforming structures herein involved, the free-standing signs,

the provisions of the ordinance attempting to deny plaintiff this right conferred by state law is invalid.

Defendant also refers to R. C. 713.14, which provides that R. C. 713.06 to 713.12, inclusive, do not affect "any power granted by law or charter to any municipal corporation or the legislative authority thereof, or impair or restrict the power of any municipal corporation under Article XVIII of the Ohio Constitution." However, the sections herein involved are R. C. 713.13 and 713.15, which are specifically excluded from the operation of R. C. 713.14, thereby evincing a legislative intent that these sections (R. C. 713.-13 and 713.15) do restrict the power of a municipal corporation to enact police regulations in conflict therewith. Accordingly, the third assignment of error is well taken.

For the foregoing reasons, the first, second, and fourth assignments of error are overruled, and the third assignment of error is sustained; the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court for the entry of the appropriate judgment in accordance with law consistent with this decision.

*Judgment reversed.*

STRAUSBAUGH, P. J., and REILLY, J., concur.