Ralph D. AILES and Elizabeth J. Ailes, Appellants (Defendants Below),

v.

DECATUR COUNTY AREA PLANNING COMMISSION and Decatur County Board of Zoning Appeals, Appellees (Plaintiffs Below).

and

Melvin T. ROUSE, Appellant (Defendant Below),

v.

RIPLEY COUNTY AREA PLAN COMMISSION, Appellee (Plaintiff Below).

No. 1–381A98.

Court of Appeals of Indiana, Fourth District.

July 28, 1982.

Rehearing Denied Sept. 2, 1982.

Jack R. Shields, Batesville, for appellants Ralph D. Ailes, Elizabeth J. Ailes and Melvin T. Rouse.

George R. Watts, Watts & Polanski, P. C., Greensburg, for appellees Decatur County Area Planning Commission and Decatur County Bd. of Zoning Appeals.

Stephen T. Taylor, Eaton & Taylor, Versailles, for appellee Ripley County Area Plan Com'n.

MILLER, Presiding Judge.

This is a consolidated appeal challenging the constitutionality of amortization provisions in the zoning ordinances of two different counties, both of which require the discontinuance of pre-existing lawful nonconforming uses of real estate upon the expiration of a specific number of years. After injunctions were issued against appellants (Ralph and Elizabeth Ailes and Rouse) enjoining them from operating junkyards at their residences, both the Aileses and Rouse brought independent motions for relief from their respective judgments, pursuant to Ind.Rules of Procedure, Trial Rule 60(B), alleging the applicable amortization provision constituted an unconstitutional taking of property and an unreasonable exercise of police power. Both motions were denied, and the parties appeal raising only the constitutional issue for our consideration.[1] We affirm.

## FACTS

Both appeals come before us on agreed statements of the records, pursuant to Ind. Rules of Procedure, Appellate Rule 7.3. The facts in both causes are undisputed. The Aileses' real estate, on which they also resided, had been used as a junkyard and automobile wrecking yard since 1967 or 1968, before the effective date of the Decatur County zoning ordinance enacted in 1975 and continued uninterrupted until the date of suit in 1979. In 1975, Decatur County zoned an area, which included the Aileses' residence, for one and two family residences only and prohibited the maintenance of junkyards[2] or automobile wreck-

1. On appeal Rouse adopted the Aileses' brief. Each county planning commission filed a separate appellee's brief. Separate reply briefs were filed by Rouse and the Aileses.

2. Section 1.18 of the Decatur County Comprehensive Area Plan and Zoning Ordinance of 1975 defines "junkyard" as:

"An open area or fenced in enclosure, where used or second hand materials are bought, sold exchanged, stored, baled, packed, disassembled or handled including but not limited to appliances, scrap iron and other metals, paper, rags, rubber tires, and bottles. A junk yard includes an automobile wrecking yard, but does not include uses established entirely within enclosed buildings."

The Aileses' real estate includes a detached garage-like structure which the parties agree is in a state of disrepair and has a negligible fair market value. In its findings of fact, the trial court found the Aileses were storing the offending material both inside and outside this structure, and that the structure itself constituted

ing yards[3] within that district. The Aileses do not dispute the use of their real estate in the current manner is proscribed by the ordinance, and the trial court so found.[4] The trial court also found the use of the real estate constituted a lawful nonconforming use which should have been abated within three years of the ordinance's enactment in 1975 under the following amortization provisions:

"3.23. Any nonconforming use of land not involving any structure, ... may be continued for a period not to exceed three years after enactment of the ordinance, whereupon such nonconforming use shall cease or structure shall be removed.

3.24. Any building or structure devoted to a nonconforming use with a fair market value of less than $500.00 as determined by the Board of Appeals, may be continued for a period not to exceed three years after enactment of the ordinance, whereupon such nonconforming use shall cease and thereafter such building or structure shall be removed or changed to a conforming use."

On September 18, 1979 the trial court therefore issued an injunction against the use of the property as a junkyard and ordered removal of the offending materials. The Aileses moved for relief from the judgment challenging the constitutionality of the amortization provisions. The trial court overruled their motion. On appeal, both parties state there is no issue of fact but only an issue of law which questions whether an amortization provision eliminating a "nonconforming, pre-existing, uninterrupted, otherwise lawful use" of real estate is a taking of property without due process and an unreasonable exercise of police power.

Rouse's appeal presents a similar record. Rouse began using his residential real estate as a junkyard in approximately 1953. In 1970, Ripley County zoned the district including Rouse's real estate for medium density single and two-family residences, where junkyards[5] are not permitted. Rouse does not challenge the trial court's finding that he is maintaining a junkyard in violation of the ordinance, nor does he challenge the applicability of the following amortization provision contained in Section 3.5 of the ordinance:

"The lawful use of a building or premises existing at the time of passage of the ordinance, may be continued although such use does not conform to all the provisions of this ordinance or amendments to this ordinance except as hereinafter provided.

. . . .

(g) Any nonconforming open use of land shall be discontinued within (5) years

---

junk. Although the Aileses raise an objection to this characterization of the "structure," we note the amortization provisions at issue also require discontinuance of prior nonconforming uses of structures as well as open land. See § 3.24 of the Ordinance quoted *infra*.

3. Section 1.7 of the Ordinance defines an "automobile wrecking yard" as:
"Any area where two or more motor vehicles, not in running condition, or parts thereof, are stored in the open and are not being restored to operation; or any land, building or structure used for the wrecking or storing of such motor vehicles, or parts thereof, not in running condition."

4. The trial court specifically found:
"Defendants are storing on their property, both out in the open and within a structure:
a. Two or more motor vehicles (including boats, vans, trucks, cars, and tractors), not in running condition, or parts thereof;
b. Various used and second hand materials, debris, junk, trash, engines and motors,

barrels, parts of appliances, scrap metal, rags, broken bottles, garbage, salvaged items, waste materials, used tires, and other unsightly objects."
There was no request in the record for specific findings of fact.

5. The record does not contain a copy of the definition of "junkyard" under the Ripley County Zoning Ordinance—Master Plan Ordinance of 1970. However, in its statement of facts, the Ripley Commission asserts:
"The Ordinance defines junkyard as a place usually outdoors, where waste or discarded used property other than organic matter is accumulated and/or stored and is or may be salvaged for reuse or resale, including but not limited to, one or more unlicensed or inoperable motor vehicles, or farm machinery or equipment of any kind."
In his reply brief, Rouse adopted the Commission's statement of facts.

from the date of passage of this ordinance." [6]

On August 8, 1978 the trial court issued an injunction ordering removal of all junked equipment and automobiles from Rouse's real estate. Rouse moved for relief from the judgment alleging the amortization provision was unconstitutional. The trial court's subsequent finding that the challenged provision was not an unconstitutional taking of property without due process of law is the only question raised in Rouse's appeal.

## DECISION

 The Aileses and Rouse challenge the respective amortization provision as an unconstitutional taking of property and as an unreasonable exercise of police power. It is well established, however, that reasonable zoning regulations are a proper exercise of police power and are not unconstitutional merely because they regulate the uses of private property. *Town of Homecroft v. Macbeth*, (1958) 238 Ind. 57, 148 N.E.2d 563; *Field v. Area Plan Commission of Grant County*, (1981) Ind.App., 421 N.E.2d 1132; *Metropolitan Board of Zoning Appeals v. Sheehan Construction Co.*, (1974) 160 Ind.App. 520, 313 N.E.2d 78. The ultimate purpose of zoning regulations is to confine certain classes of uses and structures to specific areas, *Jacobs v. Mishawaka Board of Zoning Appeals*, (1979) Ind.App., 395 N.E.2d 834, thereby insuring and promoting the public's health, safety, convenience and welfare. *Board of Zoning Appeals of New Albany v. Koehler*, (1963) 244 Ind. 504, 194 N.E.2d 49. It is the express goal of zoning legislation to encourage enactment of zoning ordinances "to the end that highway systems be more carefully planned, that new communities grow only with adequate street, utility, health, educational and recreational facilities; that the needs of agriculture, industry, and business be recognized in future growth, [and] that *residential areas provide healthy surroundings for family life . . . .*" (Emphasis added.) Ind.Code 18–7–4–1 et seq., repealed by

Acts 1974, P.L. 75, § 3; 1978 P.L. 95, § 4, 1979 P.L. 178 § 164 and substantially reenacted at Ind.Code 36–7–4–201. To accomplish these objectives, a zoning regulation may control the use of land and structures in a particular locality, but it must be within the limitations imposed by statutory and constitutional provisions, and it must have a real and substantial relation to the public health, safety, or general welfare. *Field v. Area Plan Commission of Grant County, supra,* at 1138 *quoting* 30 I.L.E. *Zoning* § 8 at 647 (1960); *accord* 101 C.J.S. *Zoning* § 54 (1958).

 In the instant case, we are specifically concerned with the zoning of residential areas and the regulation of prior nonconforming uses. It is well settled that zoning of family residential areas bears a substantial relationship to the public safety and general welfare. *Field v. Area Plan Commission of Grant County, supra; Antrim v. Hohlt,* (1952) 122 Ind.App. 681, 108 N.E.2d 197. Exclusion of commercial and industrial uses of land and structures in residential areas ensures the quiet of natural surroundings and vegetation, and decreases the risk of various annoyances from competing usages. *Antrim v. Hohlt, supra.* We have also previously recognized the inherent rationale for excluding junkyards specifically from residential zones:

> "[The maintenance of a junkyard in a residential area] may well destroy the value of [the] neighbors' property, provide an attractive nuisance for neighborhood children, lure uninvited scavengers, provide cover and breeding grounds for rodents and insects, and generally constitute a threat to the health, safety and welfare of neighborhood residents."

*Field v. Area Plan Commission of Grant County, supra,* at 1139, fn. 6. Junked automobiles are particularly recognized as presenting a considerable health and safety hazard. As explained in *Lachapelle v. Goffstown,* (1967) 107 N.H. 485, 225 A.2d 624 (upholding an amortization provision applied to a junkyard in a residential zone), they tend to still have gasoline in their

---

**6.** There is no structure involved in Rouse's use of his property as a junkyard.

tanks, children are attracted to them, they may fall if disturbed and they tend to create neighborhood blight. Consequently, the state has a reasonable and legitimate interest in zoning areas for solely residential use and in excluding junkyards from residential areas. *Field v. Area Plan Commission of Grant County, supra; Antrim v. Hohlt, supra.*

Under many ordinances, however, proof of a prior nonconforming use [7] constitutes a defense to an action alleging a violation of a zoning ordinance. Generally, zoning ordinances have no retroactive effect and work no disturbance with existing property uses. *Dandy Co., Inc. v. Civil City of South Bend,* (1980) Ind.App., 401 N.E.2d 1380. Thus, the right of a municipality to enact zoning restrictions is subject to vested property interests, *Jacobs v. Mishawaka Board of Zoning Appeals, supra,* and consequently, as emphasized by the Aileses and Rouse, an ordinance prohibiting *any* continuation of a pre-existing lawful use is unconstitutional as a taking of property without due process of law and as an unreasonable exercise of police power. *Id.*

Generally, however, nonconforming uses are not favored since they impede the attainment of the legitimate purpose of zoning ordinances to secure the gradual or eventual elimination of such uses, *id.; Misner v. Presdorf,* (1981) Ind.App., 421 N.E.2d 684, and zoning ordinances routinely employ various methods to eliminate such uses, including the prohibition of resumption of the nonconforming use after abandonment or destruction of nonconforming structures, and the prohibition of alterations or expansion of nonconforming uses. *Jacobs v. Mishawaka Board of Zoning Appeals, supra.* E.g., *Fidelity Trust Co. v. Downing,* (1946) 224 Ind. 457, 68 N.E.2d 789 (dilapidated refreshment stand destroyed by fire could not be reconstructed); *Chizum v. Elkhart County Plan Commission,* (1970) 147 Ind. App. 691, 263 N.E.2d 654 (erection of light-

poles along dragstrip was an illegal extension of nonconforming use). These methods have withstood constitutional attack in view of the public interest. *See Misner v. Presdorf, supra* (where the Court found an ordinance prohibiting expansion of a nonconforming use was not an unconstitutional taking); 101 C.J.S. *Zoning* § 63 (1958).

While amortization, the method used in the instant case to eliminate prior nonconforming uses upon the expiration of a specific period of time, has not been specifically challenged in this jurisdiction, it is, however, a method commonly employed in other jurisdictions. *See Annot.,* 22 A.L. R.3d 1134 (1968). There is a divergence of opinion among our sister states concerning the constitutionality of amortization provisions. Although a few states have concluded this method is unconstitutional per se, *e.g., DeMull v. Lowell,* (1962) 368 Mich. 242, 118 N.W.2d 232; *Hoffman v. Kinealy,* (1965) Mo., 389 S.W.2d 745; *United Advertising Corp. v. Raritan,* (1952) 11 N.J. 144, 93 A.2d 362; *Sun Oil Co. v. Upper Arlington,* (1977) 55 Ohio App.2d 27, 379 N.E.2d 266, the greater weight of authority supports the use of amortization provisions if they are reasonable, usually weighing the private loss against the public gain in each case. *See Annot.,* 22 A.L.R.3d 1134 §§ 3, 4 (1968 & Supp. 1981).

We find this latter approach to be the more well-reasoned view under the circumstances before us. The absolute prohibition of amortization may unnecessarily impede the legitimate goal of zoning to eliminate nonconforming uses in the public interest. As explained in *Lachappelle v. Goffstown, supra :*

"We believe that the rigid approach taken by [those cases finding amortization unconstitutional per se] has a debilitating effect on effective zoning, unnecessarily restricts the police power and prevents the operation of a reasonable and flexible method of eliminating non-

---

**7.** A prior non-conforming use is defined as a use of premises which lawfully existed prior to the enactment of a zoning ordinance and which is allowed to continue after the ordinance's effective date although it does not comply with the use restrictions applicable in the area. *Jacobs v. Mishawaka Bd. of Zoning Appeals, supra.*

conforming uses in the public interest. It is impossible to treat this problem in the abstract or to apply the same time limitation to all nonconforming uses. However, this should not prevent reasonable attempts to discourage the continuation of nonconforming uses in the process of furthering an important public need without confiscatory damage to the landowner."

*Id.* at 488–89, 225 A.2d at 627.

In theory, amortization provides a grace period in which the user may continue the nonconforming use, amortize the investment and make future plans. The amortization period may well provide the user with more time than necessary to realize the economic life of the nonconforming use. This factor is not dispositive, however, and may have no applicability to the open use of land, as opposed to the use of a structure. Several elements must therefore be considered in determining the reasonableness of a given amortization provision as applied to particular circumstances. For example, the public benefit may be determined by considering the offensiveness of the nonconforming use in view of the surrounding neighborhood; the private loss may be measured by the value of the nonconforming use, the damages incurred by compliance including the hardship imposed on the user, and the length of time allowed for amortization. *Annot.,* 22 A.L.R.3d 1134, *supra.*

 In the record before us, there is no evidence indicating the degree, if any, of hardship or loss to the landowners which will be occasioned by compliance with the zoning ordinances.[8] A similar problem was presented in *Board of Supervisors v. Miller,* (1969) Iowa, 170 N.W.2d 358, where an amortization provision requiring discontinuance of an automobile-wrecking yard within five years was found reasonable and

a constitutional exercise of police power, in the absence of any evidence regarding the value or investment involved, or the extent of hardship invoked by compliance. See also *State v. Joyner,* (1974) 23 N.C.App. 27, 208 S.E.2d 233, where the court held the owner must show the loss occasioned by compliance and upheld a three year amortization applied to a salvage yard in the absence of such evidence. Neither the Aileses nor Rouse present a record of any evidence on these factors which would allow this Court to balance the interests involved and determine the reasonableness of the amortization provisions as applied to their property.[9] On the other hand, we are confronted with the inherently debilitating effects of maintaining a junkyard in a residential neighborhood and the resultant legitimate interests of the state in eliminating nonconforming uses for the public welfare. We find the amortization provisions at issue in the instant case are not unconstitutional per se.

We do not hold all amortization provisions are constitutional per se or as applied under all circumstances. Even an amortization provision valid on its face may be found unconstitutional as applied to a particular parcel of real estate after weighing the pertinent factors, some of which are enumerated above. The rule of reasonableness must prevail, considering the public gain versus the private loss. As in all zoning cases, each case must be decided on its own facts. *Nelson v. Board of Zoning Appeals of Indianapolis,* (1959) 240 Ind. 212, 162 N.E.2d 449; *Jacobs v. Mishawaka Board of Zoning Appeals, supra.*

The judgment of the trial court is affirmed.

CONOVER, J., concurs.

YOUNG, J., dissents with opinion.

---

8. Indeed, the removal of the offending materials may well increase the value and marketability of their real estate as residential property.

9. It does not appear that the Aileses or Rouse ever presented the issue directly to their zoning boards. Where a person seeks to challenge the constitutionality of a zoning ordinance as applied to their property, the issue must first be presented to the board of zoning appeals. *E.g., Town of Homecroft v. Macbeth, supra; Board of Zoning Appeals of New Albany v. Koehler, supra.*

YOUNG, Judge, dissenting.

I dissent.

The so-called "amortization" provision in the two ordinances is a taking of property without due process. Therefore, it is an unreasonable exercise of police power and unconstitutional *per se. See, e.g., Hoffman v. Kinealy,* (1965) Mo., 389 S.W.2d 745; *Sun Oil Co. v. City of Upper Arlington,* (1977) 55 Ohio App.2d 27, 379 N.E.2d 266. The state and its cities and towns have a legitimate interest in the elimination of prior nonconforming uses. The method of elimination, however, must be reasonable. Here it is not reasonable. Any public gain realized by the use of amortization provisions is outweighed by the private loss. I would reverse.