**CONSOLIDATED CITY OF INDIANAPOLIS, City Controller's Office, and Fred L. Armstrong, Appellants (Defendants Below),**

v.

**Sherri CUTSHAW, et al., Appellees (Plaintiffs Below).**

No. 1–1281A355.

Court of Appeals of Indiana, First District.

Jan. 3, 1983.

Rehearing Denied Feb. 3, 1983.

John P. Ryan, Mark Dall, Jane Seigel, City-County Legal Div., Indianapolis, for appellants.

Franklin I. Miroff, Ancel & Miroff, P.C., Richard Kammen, McClure, McClure & Kammen, Indianapolis, for appellees.

ROBERTSON, Judge.

The defendant-appellant City of Indianapolis (City) appeals from the granting of summary judgment in a cause for declaratory judgment brought by the plaintiffs-appellees which is comprised of massage parlor owners and operators, an adult theater owner, and adult bookstore owners. The trial court found that the City's Zoning Ordinance 76–AO–2 was constitutionally deficient in a number of particulars.

We reverse.

On September 13, 1976, the City-County Council of Indianapolis and Marion County, Indiana, passed Special Exceptions Zoning Ordinance 76–AO–2 which created a "Class 1 Regulated Commercial Use". The purpose of the ordinance [1] was to create a 500 foot space between specified zoning districts and so-called adult establishments and amusement arcades. The particular Class 1 Regulated Uses under scrutiny in this appeal are defined in the ordinance as:

MASSAGE PARLOR, SERVICE OR FACILITY (excepting any therapeutic, medical or surgical services or facilities of a regularly licensed hospital or dispensary, or the professional services of a physician, osteopath or chiropractor duly registered with and licensed by the state).
ADULT BOOKSTORE: or similar adult facility for the display, distribution, barter, rental or sale of printed matter, pictures, films, graphic or other materials, including but not limited to ADULT "MUSEUM".
ADULT THEATER; ADULT AMUSEMENT, RECREATION OR ENTERTAINMENT CENTER OR FACILITY (except those establishments which only infrequently present such films, theatrical productions, performances, recitals, displays, printed matter or other entertainment as would require the exclusion of minors pursuant to state law for reasons other than the sale or consumption of alcoholic beverages on the premises).

The ordinance required that a Class 1 Regulated Use had to apply for and be granted a Special Exception by the Board of Zoning Appeals. The special exception would be granted upon a determination by the Board that:

a. The proposed use will not be injurious to the public health, safety, morals, convenience or general welfare;

b. The perimeter of the subject lot is not located within five hundred (500) feet of any residential ZONING DISTRICT: HISTORIC PRESERVATION ZONING DISTRICT: MARKET SQUARE ZONING DISTRICT: PARK (PE–1 or PE–2) ZONING DISTRICT: UNIVERSITY QUARTER ZONING DISTRICT: SPECIAL USE ONE (SU–1 CHURCHES), SPECIAL USE TWO (SU–2 SCHOOLS), SPECIAL USE THIRTY-SEVEN (SU–37 LIBRARY) OR SPECIAL USE: THIRTY-EIGHT (SU–38th COMMUNITY CENTER) ZONING DISTRICT: or the perimeter of any public or private school site.

c. The proposed use will not injure or adversely affect the adjacent area or property values therein; and

d. The proposed use will be consistent with the character of the DISTRICT, land use authorized therein and the metropolitan comprehensive plan.

The regulated uses were also required to comply with any other applicable requirements of local zoning ordinances. The ordinance also contained an amortization clause requiring the regulated uses be brought into compliance on or before the 1st day of January, 1978. The ordinance definition of "adult" is:

---

1. The preamble of the ordinance stated, in part:
   WHEREAS, because of the exceptional land use characteristics and locational impacts of certain commercial uses which, if inappropriately located within COMMERCIAL ZONING DISTRICTS, may have a deleterious effect upon other land uses and values within the County, it is recognized that the further classification, sub-classification or subdivision and regulation of such uses is essential—if property values within Marion County are to be preserved and the public health, safety, comfort, morals, convenience and general welfare promoted;

prohibited by state law from being open to the general public and, pursuant to such law, excluding any minor (for reasons other than the sale or consumption of alcoholic beverages on the premises) from the customers, patrons, clients and persons to whom the sales, services or facilities of the use are offered or available, or from its premises.

Lastly, the ordinance contained a severability clause which stated that any portion of the ordinance found to be unconstitutional shall not affect the remainder of the ordinance.

A number of massage parlor owners and operators affected by the ordinance filed a cause of action seeking a declaratory judgment on the constitutionality of the ordinance and injunctive relief. Thereafter, additional intervening plaintiffs whose interests included adult theaters and bookstores were added to the suit. Eventually, the case was submitted for summary judgment on the plaintiffs-appellees' motions. The trial court held, in applicable part:

Comes now the Court and having taken this matter under advisement and having reviewed the evidence and having considered the arguments of counsel now grants the plaintiff's Motion for Summary Judgment and the Court finds that the Marion County Special Exception Ordinance # 76–AO–2 is unconstitutional as relates to the First Amendment to the Constitution of the United States of America in that the ordinance is violative of the First and Fourteenth Amendments to the United States Constitution in that the ordinance suppresses, censors and otherwise attempts to ban 'adult' businesses from the City of Indianapolis regardless whether their stock in trade is protected under the freedoms of speech and of the press which is tantamount to a prior restraint.

Further the Court finds that the Zoning Ordinance constitutes an impermissible "prior restraint" upon the freedoms of speech and press and furthermore denies the general public of their "right to access" to such communication in violation of the First and Fourteenth Amendments to the United States Constitution.

Further the Court finds that the Ordinance unconstitutionally denies 'equal protection of the laws' in violation of the Fourteenth Amendment to the Constitution of the United States.

Further the Court finds that the Ordinance is repugnant to Fifth and Fourteenth Amendments to the United States Constitution and contrary to the Constitution of the State of Indiana is that it constitutes a 'taking' of vested property rights without due process of law.

Further the Court finds that the ordinance is void as being retroactive in violation of the First and Fourteenth Amendments to Article 1, Section 10 of the Constitution of the United States.

The issues presented by the City in appealing from this summary judgment are:

1. Whether the ordinance constitutes an unlawful prior restraint on protected speech;

2. Whether the ordinance denies equal protection of the laws;

3. Whether certain terms of the ordinance are unconstitutionally vague,

4. Whether the ordinance is overbroad;

5. Whether the amortization provisions in the ordinance are a taking of vested property rights without due process of law; and

6. Whether the ordinance impairs the obligation of contracts.

Initially, a survey of the appropriate ground rules in the appellate review of an appeal involving a summary judgment is appropriate. Summary judgment may be granted only if all the material on file shows that there was no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Carrell v. Ellingwood,* (1981) Ind.App., 423 N.E.2d 630. A fact is material if it is decisive of either the action or a relevant secondary issue. *Lee v. Weston,* (1980), Ind. App., 402 N.E.2d 23. It cannot and should not be used as an abbreviated trial. *Podgorny v. Great Central Insurance Company,*

(1974) 160 Ind.App., 244, 311 N.E.2d 640. The trial judge may *not* weigh the evidence in a summary judgment proceeding. Even where the facts are undisputed, the ability to draw from them conflicting inferences which alter the outcome, will make summary judgment inappropriate. *Carrell, supra.* In reviewing the propriety of a summary judgment, the facts alleged by the party opposing the motion must be taken as true. *Boswell v. Lyon,* (1980) Ind.App., 401 N.E.2d 735. Even if the trial judge believes the proponent of the motion will prevail at trial, or where he believes the likelihood of recovery is improbable, such are not the basis for summary judgment. *Carrell, supra.* In reviewing the granting of a summary judgment, this court applies the same standard as that applied by the trial court. *Richards v. Goerg Boat & Motors, Inc.,* (1979) Ind.App., 384 N.E.2d 1084.

Other general observations relating to the constitutional questions raised in this appeal are: Constitutional rights are personal and the court will consider only allegations of unconstitutionality in a particular fact situation which the plaintiff has brought to court. *State v. Baysinger,* (1979) Ind., 397 N.E.2d 580.[2] Courts are permitted to reach constitutional questions only when such determination is absolutely necessary. *Petition of Ackerman,* (1980) Ind.App., 409 N.E.2d 1211. Abstract assertions that someone's rights are impaired are not sufficient to raise constitutional issues. *Phillips v. Stern,* (1969) 145 Ind.App. 628, 252 N.E.2d 267. Courts will not examine constitutional questions as a matter of mere exercise or academic interest. *Garcia v. Slabaugh,* (1974) 159 Ind.App. 631, 308 N.E.2d 714.

We stress the foregoing rules because, in our opinion, the quantity and quality of the facts revealed in the record in support of, or in opposition to, summary judgment can charitably be characterized as sparse.

The City's first issue is predicated upon the question of whether the ordinance constitutes an unlawful prior restraint on protected speech. We are compelled to note substantial differences in the manner and means of the applicability of First Amendment guarantees to the parties. We find that those appellees representing massage parlors cannot avail themselves of First Amendment rights.

"Furthermore, to the extent that the plaintiffs' attack on the Code's massage-related provisions is grounded upon any alleged infringement of first amendment rights of expression, that attack is frivolous. In this context, this Court can perceive no communicative characteristics of any substance which would bring massage parlors within the ambit of the first amendment's free speech clause. As against these plaintiffs, then the Code's provisions governing adult massage parlors will infringe no constitutional rights."

*Bayside Enterprises, Inc. v. Carson,* (M.D. Fla.1978) 450 F.Supp. 696. *See also: United Health Clubs of America, Inc. v. Strom,* (D.S.C.1976) 423 F.Supp. 761; *City of Madison v. Schultz,* (1980) 98 Wisc.2d 188, 295 N.W.2d 798. We believe that to be a fair statement of the law in Indiana.

Viewed from a different perspective, and in a context directly related to the summary judgment of the trial court, the record is barren of facts showing what transpires within the confines of a massage parlor that is to be protected by the First Amendment. Is it political oratory; the reading of literature; a dance exhibition? More than likely it is not, with the essential point being that the trial court was never advised in a manner reflected by the record of what massage parlor activities, if any, require First Amendment guarantees. A genuine issue of material fact exists.

On the other hand, pleadings exist in the record to indicate that the theater and bookstore interests deal in adult films and publications. These materials are due First

---

**2.** *Baysinger, supra,* points out an exception to this rule which, in our opinion is not presently applicable to this appeal.

Amendment guarantees, with certain exceptions[3] not relevant to this appeal.

■ It has been held by the highest judicial authority that theaters dealing in adult fare can be required to conform to zoning laws just as any other business. *Young v. American Mini Theaters,* (1976) 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 states:

[W]e have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not a sufficient reason for invalidating these ordinances."

*Young* continues, however, that to withstand a constitutional test of First Amendment rights the zoning cannot have the effect of suppressing production of, or restricting assess to, adult materials. The record does contain a set of zoning maps of Indianapolis and Marion County with certain areas shaded in red. Argument is made that these red shaded areas are where the regulated uses are permitted, although a search of the record does not reveal that the trial judge was apprised of this fact. We cannot tell, nor do we believe that the trial judge could tell, if these maps make any substantial evidentiary contribution in establishing whether access to these establishments is restricted, enhanced, or remains the same. According to *Young, supra,* that is an essential part of determining whether or not there is an interference with constitutional rights.

■ The City's second issue disputes the trial court's finding that it impinges equal protection guarantees in that, for example, adult theaters may be treated differently than other theaters as evidenced by the

holding in *Young, supra.* At the heart of this issue is the blighting influence of adult establishments alluded to in the previously footnoted preamble of the ordinance. Again, this issue must fall prey to the same deficiencies of the previous issue: the lack of a factual basis for the trial court's ruling. Considering the well established rule that a court may not take judicial notice of ordinances,[4] *Elmore v. City of Sullivan,* (1978) 177 Ind.App. 495, 380 N.E.2d 108, and further considering the lack of evidence before the trial court on the blighting influence of adult establishments on neighborhoods, we are of the opinion that a genuine issue of material fact exists. We would think, for instance, that if it was shown by proper evidence at a trial that some of the adult establishments did not cause the blighting or deleterious effect complained of, then a valid equal protection argument may be present. However, under the state of this record, we cannot ascertain whether that is, or is not, the case.

■ The next issue raised by the City attacks the trial court's decision that the amortization provisions of the ordinance was a taking of a vested property right without due process of law. Subsequent to the commencement of this appeal, the Fourth District of this Court rendered a less than unanimous and qualified approval of the constitutionality of amortizing non-conforming uses by means of zoning ordinances. *Ailes v. Decatur County Area Planning Com'n.,* (1982) Ind.App., 437 N.E.2d 1375 (transfer pending). However, in order to avoid a conflict with the Fourteenth Amendment, significant conditions must be present:

In theory, amortization provides a grace period in which the user may continue the nonconforming use, amortize the investment and make future plans. The amortization period may well provide the user with more time than necessary to realize the economic life of the nonconforming

---

**3.** Such as obscene materials. See: *Miller v. California,* (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419.

**4.** Ind.Code 36–7–4–1020, which was passed by the legislature in 1981, may have the effect of changing this rule of evidence.

use. This factor is not dispositive, however, and may have no applicability to the open use of land, as opposed to the use of a structure. Several elements must therefore be considered in determining the reasonableness of a given amortization provision as applied to particular circumstances. For example, the public benefit may be determined by considering the offensiveness of the nonconforming use in view of the surrounding neighborhood; the private loss may be measured by the value of the nonconforming use, the damages incurred by compliance including the hardship imposed on the user, and the length of time allowed for amortization. *Annot.,* 22 A.L.R.3d 1134.

437 N.E.2d at 1380.

The record contains facts which show that many, if not all, of the appellees were in the massage parlor, adult theater, or adult bookstore business at their respective locations prior to the passage of the ordinance. Additionally, we have the preamble of the ordinance indicating a purpose of ending the blighting influence of adult businesses. The factual record stops there, however, in providing a background of relevant information relating to the considerations listed in *Ailes, supra.* That being the case, we are of the opinion that a genuine issue of material fact exists on this issue as well.

The City's next issue argues that the ordinance is not unconstitutionally vague. As an example of this issue, both parties argue whether the phrase "not infrequently", as used in the ordinance's definition of an adult theater, is readily susceptible of definition. Constitutional questions require actual facts and not hypothetical discussion before a decision can be rendered. We are of the opinion that this issue, like the others, should not have been decided by summary judgment. What if *all* of a theater's performances were adult? Obviously, the term "not infrequently" would not come into play and the required actual controversy does not appear. A factual vacuum exists preventing a decision on this issue. In the same vein, the parties argue what constitutes a church, or a

school, or a neighborhood center. It would make a substantial difference in deciding their appeal if we knew that the appropriate zoning authorities would require a golf instruction school to be located exclusively in a Special Use Two (SU–2 Schools) district. Or would a primary or secondary school, as it is traditionally thought of, be the rightful occupant of such a district? We don't know, nor will we guess.

The City's next issue asserts that the ordinance is not overbroad in the constitutional sense because it does not restrict access to adult materials. We are of the opinion that our discussion of the first two issues and the applicability of *Young, supra* is also dispositive of this issue. A genuine issue of material fact exists.

The City's final issue, whether the ordinance unconstitutionally impairs the right to contract, appears to be a different manner of stating the prior issue on amortization. As a result, we believe this issue is subject to the same deficiencies.

We are of the opinion that summary judgment was improperly granted. The cause is reversed and remanded for further proceedings not inconsistent with this opinion.

Judgment reversed.

RATLIFF, P.J., and NEAL J., concur.