**CURTISS, Plaintiff-Appellee, v. CLEVELAND (City) et al, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23398. Decided December 11, 1957.

McCreary, Hinslea & Ray, for plaintiff-appellee.

Ralph S. Locher, Director of Law, for defendants-appellants.

James Metzenbaum, Abraham Kollin, Walter & Haverfield, Robert Merkle, for defendants-appellees.

## OPINION

Per CURIAM:

This appeal comes to this court for rehearing as directed by the mandate of the Supreme Court of Ohio where the judgment of this court, previously entered, was affirmed in part and set aside in part and the cause remanded for further consideration to the extent necessary to conform to the Supreme Court's directions. (See **166 Oh St 509,** 144 N. E. 2d 177.)

As indicated by our opinion (**74 Abs 499,** 130 N. E. 2d 342,) and by the findings of fact and conclusions of law which this court returned upon request and filed with the papers in the case, with particular reference to the description of the physical surroundings (paragraphs 10, 25, 26 and 27 of the findings of fact which are here re-adopted), the value of the business property affected by the ordinances here being considered was clearly shown by the record to have been greatly depreciated. The property, zoned for residence purposes, to the north and south of Lake Shore Boulevard, had been completely improved prior to the adoption of the ordinances here involved except for a very few remaining vacant lots, and eighty per cent or more of the frontage on Lake Shore Boulevard (the Lake Shore Boulevard frontage being the only property affected by these ordinances) had been improved for retail business (see findings of fact paragraphs 25 and 26). The effect of the amended zoning ordinances was to make all such business property, as improved by the individual owners, nonconforming uses without right of substitution or change except by permission and at the discretion of the zoning board of appeals.

As shown by the findings of fact, a substantial part of the value of the improved business properties on the Boulevard would be destroyed by the amendatory ordinances in making such property subject to the limitations of a nonconforming use, and that such change was not, in fact, based on or in the interest of the public health, safety, morals or general welfare. Matters of traffic and sanitation claimed by the City as some of the considerations for the change in zoning, did not, in fact, beneficially affect such matters, which are otherwise subject to the control of the City in the exercise of its police power.

Because this territory, including that zoned for residence purposes, was almost completely developed, the zoning change being limited to just the property fronting on Lake Shore Boulevard, which includes only a few vacant lots comprising less than twenty per cent of the Boulevard frontage west of Neff Road, the part affected by this decree, the change bore no relationship to the public health, morals, safety or the general welfare of the people in and about such territory. The provisions of the amendatory ordinances, reclassifying the vacant land, are here sustained.

This court, in its first decree, did not intend to found its judgment on a supposed "contract" theory or right to continue a use once lawfully permitted where substantial sums had been expended upon the improvements within the then zoning limitations. It was the purpose of this court's decree to protect each established retail business property here affected from loss in value almost to the extent of confiscation because of its reclassification by these zoning ordinances into the category of a nonconforming use, the amendatory ordinances bearing no relation to the public health, morals, safety or the general welfare, particularly where all the property affected comprised an almost completely developed retail business territory surrounded by a completely built residential area. This court, in its judgment, intended to afford the same protection to properties, here becoming nonconforming uses, against destruction in value by reason of these zoning amendments as is now provided for as to properties coming into a like situation by the provisions of §713.15 R. C., effective 8/27/57, which reads as follows:

"The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or amendment thereto, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of such land shall be in conformity with §713.01 to §713.15, inclusive, R. C. **The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance.**" (Emphasis added.)

It is further considered that the ordinances which are the subject of this action, with regard to the provisions for nonconforming uses of the properties here affected, are now in direct conflict with the general law as enacted by the legislature in the foregoing section and are, there-

fore, now inoperative as to these properties. This action being in equity, the authority of this section, enacted by the legislature before entering this judgment, may here be considered and is controlling.

. We, therefore, now hold that as to the properties specifically designated in our first decree (set forth in finding of fact No. 27), the prayer of the plaintiff and cross-petitioning defendants for injunctive relief is granted. This court holds that as to such properties, the rezoning thereof is confiscatory and, therefore, unconstitutional for the reason that the record shows that such ordinances bear no substantial relation by reason of the state of the improvement of the property involved and the surrounding territory and circumstances as shown by the record at the time the amendatory ordinances were passed to the public health, safety, morals or general welfare of the people.

SKEEL, PJ, KOVACHY, J, concur.
HURD, J, dissents.

## DISSENTING OPINION
By HURD, J.:

I respectfully dissent from the judgment of the majority of this court, primarily because I consider it irreconcilable with the opinion and judgment of the Supreme Court rendered in this case July 10, 1957. (See **Curtiss v. City of Cleveland, 166 Oh St 509.**)

Under date of November 23, 1955, this court held that certain amendatory zoning ordinances of the City of Cleveland as applied to plaintiff-appellee's land and the lands of certain cross-petitioning defendants-appellees, located on Lake Shore Boulevard in the City, improved for retail business, constituted an unconstitutional taking of property without due process of law. (See Katherine K. Curtiss, Plaintiff-Appellee v. City of Cleveland, et al., Defendants-Appellants-Appellees, 130 N. E. [2d] 342.) The decision of the Supreme Court affirmed in part and reversed in part the judgment of this court. The judgment of this court, holding the amendatory ordinance constitutional and valid as to all vacant land on Lake Shore Boulevard in the territory involved, was affirmed, but the judgment of this court was reversed as it applied to properties improved with retail business and the cause remanded to this court for further proceedings, the last paragraph of the opinion of the Supreme Court reading as follows:

"Since, however, the Court of Appeals as shown herein found as a matter of law that those, who had expended capital in acquiring and substantially improving lands for 'retail business' in reliance upon and in conformity with the zoning ordinance in effect prior to these amendatory ordinances, were, because of the circumstances and conditions created at the affected locations by reason of such improvements, entitled to rely upon the continuance of such prior ordinance without amendments materially increasing restrictions upon the use of their property, and entered its judgment accordingly, the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion." (See page 529.)

It is important to note that upon rehearing no new or additional

evidence has been offered in this case for the further consideration of this court in respect to all or any one of the properties of the plaintiff and cross-petitioning defendants which are improved for retail business in the pertinent area on Lake Shore Boulevard here under consideration. Upon rehearing, the plaintiff and cross-petitioning defendants have argued in favor of an order set forth in a proposed journal entry, reading as follows:

"This Court, upon reconsideration of all of the evidence in the case finds that within the law as stated in the Supreme Court opinion, the amendatory ordinances which are the subject of the litigation in this case, when applied to the properties hereinbefore listed, are unreasonable and discriminatory and without relation to the public health, safety, morals or general welfare.

"WHEREFORE, THIS COURT DOES NOW ADJUDGE AND DECREE that said amendatory ordinances specified in its former decree herein, were and are invalid and unconstitutional to the extent that they affect the specific properties hereinbefore listed and said City of Cleveland, and all its servants, agents, officers and employees are hereby permanently enjoined from any action or conduct tending to interfere with the use and enjoyment of said premises in the same manner and to the same extent as they were, or could have been used and enjoyed prior to the adoption of said amendatory ordinances."

The defendant, the City of Cleveland, opposes such an order and finding of fact by this court and argues in effect that the properties improved with retail business are nonconforming uses which have suffered no actual or potential loss but that regardless of this, the Supreme Court has decided that actual or potential loss of value resulting from the rezoning of substantially improved lands does not, of itself, render an amendatory zoning ordinance invalid.

The question thus presented for our determination upon this rehearing is whether, in the light of the decision of the Supreme Court, by which we are bound, we can now declare that the amendatory zoning ordinance, when applied to the properties improved with retail business in the affected area, is unreasonable and discriminatory and without relation to the public health, safety, morals and general welfare as a matter of fact.

A consideration of this question requires an examination and analysis of the decision of the Supreme Court which approved and followed **State, ex rel. The City Ice & Fuel Co. v. Stegner, Dir., 120 Oh St 418.**

In the first place, it should be emphasized that the Supreme Court sustained the validity of the amendatory ordinances in toto, both as to vacant land and improved lands. In respect to vacant land, the Supreme Court, through Judge Herbert speaking for a unanimous court, after citing and quoting from numerous authorities in Ohio and other jurisdictions, declared, at page 528:

"In accord with this court's decision in the Davis case, supra, and the prevailing view in other jurisdictions, as indicated in the above-cited authorities, we conclude that, upon the record before us, the appellees' contentions as to vacant land and the land upon which only temporary commercial buildings have been erected in the territory in-

volved are not well taken, and **we sustain the Court of Appeals in its finding with respect to those properties."** (Emphasis added.)

This narrows the issue to improved properties, commonly known as nonconforming uses. As to these properties, can we now declare, without new or additional evidence, that the amendatory ordinances are invalid? I think not. Considering this proposition, Judge Herbert said, at page 519:

"The Court of Appeals in its journal entry incorporated by reference its separate findings of fact so that such findings must be considered as if fully restated in the judgment entry. It may, therefore, be fairly summarized that the Court of Appeals found that the amendatory ordinances have materially impaired and are substantially destructive of the values of the specified properties on the pertinent portion of Lake Shore Boulevard that have been substantially improved for use for retail business purposes and as to such properties are unreasonable, arbitrary, capricious and confiscatory and without substantial relation to the public health, safety, morals, and general welfare; and that those who had expended capital in acquiring and substantially improving such lands for retail business purposes in reliance upon and in conformity with the provisions of the zoning ordinance as in effect prior to April 15, 1945, were because of the circumstances and conditions created and existing by reason of such improvements entitled to rely on the continuance of such ordinance without amendments materially increasing restrictions upon the use of their property.

"We find no Ohio authority for this view and consider it to be contrary to the prevailing rule. * * *"

and at page 525, we find the following significant statement:

"Appellees' reliance on the original comprehensive zoning ordinance is not sufficient to prevent a rezoning. Neither is the power of a municipality to enact amendatory zoning ordinances limited by the value or the extent of the improvements affected, **particularly when nonconforming uses are protected.** Certainly no property owner has a vested right to have the zoning classification which is in effect when he acquires or improves real estate to remain unchanged. **Where, as in this case, the rights of the property owners to continue their present use indefinitely are preserved and where provision is made for administrative appeal for relief in individual cases, the ordinance cannot readily be considered arbitrary or confiscatory."** (Emphasis added.)

It is assumed that the majority of this court seeks to base the latest judgment upon the second sentence of syllabus 2 of the Supreme Court in the instant case, which reads as follows, the pertinent part being emphasized:

"2. Actual or potential loss in value resulting from the rezoning of substantially improved lands does not of itself render an amendatory zoning ordinance invalid; and the owners of such lands have no constitutional right to rely upon the provisions of an original comprehensive municipal zoning ordinance so as to permanently impair or prevent the adoption of a subsequent amendatory ordinance. **However, if when applied to the owners of such lands such ordinance is found to**

be unreasonable and discriminatory and without relation to the public health, safety, morals or general welfare, injunctive relief will lie." (Emphasis added.) .

As I interpret the meaning of paragraph 2, it is in accordance with the holding of the United States Supreme Court in Euclid v. Ambler Realty Co., 272 U. S. 365, as shown by paragraph 9 of the syllabus of that case, which reads as follows:

"Where an injunction is sought against such an ordinance, upon the broad ground that its mere existence and threatened enforcement, by materially and adversely affecting values and curtailing the opportunities of the market, constitute a present and irreparable injury, the court, finding the ordinance in its general scope and dominant features valid, will not scrutinize its provisions, sentence by sentence, to ascertain by a process of piece-meal dissection whether there may be, here and there, provisions of a minor character, or relating to matters of administration, or not shown to contribute to the injury complained of, which, if attacked separately, might not withstand the test of constitutionaliy." (Emphasis added.)

It seems reasonable to assume from this that until new or additional evidence is presented to show that the amendatory ordinance when applied to the owners of particular lands improved with nonconforming uses is unreasonable and discriminatory and without relation to public health, safety, morals or general welfare, injunctive relief will not lie, and therefore a mere re-evaluation of the existing evidence is not sufficient to warrant a finding to set the entire ordinance aside as to these particular properties, particularly in view of the fact that the ordinance in its entirety has been upheld by the Supreme Court.

It is my view further that insofar as actual or potential loss is concerned in respect to nonconforming uses, the plaintiff and cross-petitioning appellees have no ground for complaint at this time, as loss of actual or potential value is not an exclusive criterion. The thrust of the amendatory ordinances, if they have any appreciable effect, is rather to enhance the value of these particular properties because it grants to those now established in business as nonconforming uses an exclusive monopoly in a multi-family residential zone so far as their particular type and kind of business is concerned. The only loss which could occur is what might be termed a highly speculative potential— that is, damage or destruction by fire or some other casualty, in which event the properties could not be rebuilt or repaired without application to the municipality for relief. Likewise, if extensions or variances were desired, it would be similarly necessary to make application for such extensions or variances of existing nonconforming uses.

So long as the complaining parties are enjoying the full benefit of the nonconforming uses, they have no present cause or ground for complaint. Consequently, as to their properties, the amendatory ordinances are not confiscatory, unreasonable or discriminatory in the absence of new or additional evidence to that effect. If and when an occasion should arise requiring restoration or repair of property destroyed by fire or other casualty, the ordinance makes full provision for application to the city to vary or modify the application of the ordinance in

harmony with the general purpose and intent of the 1949 ordinance as amended. Thereby, the general welfare of the interested parties and the community may be safeguarded and substantial justice done. However, the ordinance in question makes specific provision for an application for an extension of a nonconforming use or for a variance. As Judge Herbert states at page 528:

"This rule as to the general applicability of the amendatory ordinances is entirely reasonable when it is taken into consideration that section 981-63 of the 1949 ordinance (codified as section 5.1166) reads in part as follows:

" 'Paragraph (c) 1. Where there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of this chapter, the Board of Zoning Appeals shall have the power, in a specific case, to vary or modify the application of any such provisions in harmony with the general purpose and intent of this chapter so that public health, safety, morals and general welfare may be safeguarded and substantial justice done.

" '2. Limitation of Variance Powers. Such variance shall be limited to specific cases where:

" '* * *

" '2b. Refusal of the variance appealed for will deprive the owner of substantial property rights * * *.' "

So far as the record in this case is concerned, there is no application on the part of the complaining parties for a variance and consequently no refusal of a variance. Nor does the record show any application for an extension of a nonconforming use on the ground that there is practical difficulty or unnecessary hardship in the way of carrying out the strict letter of the provisions of section 981-63 of the 1949 ordinance (codified as section 5.1166) such as to invoke the power of the Board of Zoning Appeals in a specific case to modify the application of any provisions of the chapter in harmony with the general intent and purpose of the ordinance.

It is entirely conceivable that in a specific case where unnecessary hardship is shown that the Zoning Board of Appeals, upon application made, would grant such an application for an extension of a nonconforming use or for a variance, in which event the interested parties, enjoying nonconforming uses, would have no cause for complaint. If, on the other hand, such an application should be refused, appeal could then be made to the courts. However, until such a contingency occurs, the plaintiff and cross-petitioning appellees have no grievance for which a remedy must be afforded by judicial decree.

The value of the land is in its use and unless and until the complaining parties are aggrieved by some deprivation of use, no action will lie. Furthermore, this court, in the absence of new or additional evidence, should not issue an order, general in its terms, affecting all of the nonconforming uses alike.

In 8 McQuillin on Municipal Corporations, 82, Section 25.44, it is said:

"The general rule is that hardship, limitation of use or diminution

or increase of value of private property does not in itself render a zoning measure unconstitutional or invalid. Indeed, a zoning ordinance is not necessarily invalid although it is harsh and seriously depreciates the value of property involved. Nor is the test of the validity of a zoning measure its financial advantage or disadvantage to the owner arising from the measure or its enforcement.

"* * *

"Mere diminution of market value or interference with the property owner's personal plans and desires relative to his property in insufficient to invalidate a zoning ordinance or to entitle him to a variance. Similarly, the fact that property is more valuable for an excluded use does not in itself void a zoning restriction. Consistently with these principles, a zoning ordinance may classify property for residential purposes although it can more profitably or beneficially be used for commercial purposes, * * * or for industrial purposes. * * *" (Citing many authoritative federal and state cases.)

Furthermore, it is well-settled that if the validity of the legislative classification for zoning purposes presents a fairly debatable question, the legislative judgment must be allowed to control. It was so held in Euclid v. Ambler Realty Co., supra, see syllabus 4.

In the case of In re Application of Fox Meadow Estates, Inc., for an order of Mandamus, 233 App. Div. 250, 252 N. Y. S. 178, affirmed 261 N. Y. 506, 185 N. E. 714, the court, in holding that a zoning ordinance which restricted to single family dwellings the remainder of a village outside the territory adjacent to then existing business and apartment house districts was not unreasonable and discriminatory, 233 App. Div. at page 251, 252 N. Y. S. at page 179, said:

"* * * The respondent claimed and sought to establish on the trial that the ordinance was arbitrary, unreasonable, discriminatory, and confiscatory, because this particular property was included in the residence district. At most it made a debatable question, and barely that, as to the acts of the village authorities in enacting the zoning plan. It is evident that its sole object was profit, and no one joins in its complaint.

"The law is too well settled to make necessary any discussion. The power of a municipality to determine for itself what plans are necessary to promote the public health, morals, safety, and the welfare, convenience, and general prosperity of its people is a legislative question, which may not be interfered with by the courts, except in rare instances. Wulfsohn v. Burden, 241 N. Y. 288, 150 N. E. 120, 43 A. L. R. 651; Village of Euclid v. Ambler Realty Co., 272 U. S. 365; Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct., 594, 71 L. Ed. 1074."

See also, **Cleveland Trust Co. v. Village of Brooklyn, 92 Oh Ap 351,** 110 N. E. (2d) 440, 49 O. O. 422. Appeal dismissed by the Supreme Court, **158 Oh St 258,** 108 N. E. (2d) 679, 49 O. O. 90.

In the light of the decision of the Supreme Court heretofore rendered in this case and under all the facts considered in connection with the circumstances and the locality, can this court now determine, without the introduction of new or additional evidence on this rehearing, that the classification of the pertinent Lake Shore Boulevard area for multi-family purposes is an arbitrary use of the police power, unrelated to the public health, welfare, morals and safety of the community? I

think not. To so decide now on precisely the same record upon which the case was originally heard is in effect merely a re-evaluation of the evidence, which results in a nullification of the decision of the Supreme Court rendered herein. Furthermore, to do so now would be to substitute our judgment for that of the legislative body.

Aside from the considerations heretofore set forth, there is another reason why such a judicial order should not be issued. Since the rendition of the decision of the Supreme Court in this case on July 10, 1957, the legislature has enacted into law §713.15 R. C., entitled "Retroactive Zoning Ordinances Prohibited." This section, which became effective August 27, 1957, provides, in part, as follows:

"The legislative authority of a municipal corporation **shall provide in any zoning ordinance for the completion, restoration, extension or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance.**" (Emphasis added.)

Since the present ordinance provides a method of procedure to obtain relief in individual cases and since the Revised Code, by its terms, protects those enjoying nonconforming uses from loss due to destruction by fire or otherwise, and also provides for an extension of nonconforming uses on reasonable terms, and since there is no new or additional evidence upon which to predicate the majority opinion, it must be concluded, in the light of the decision of the Supreme Court in this case, and in the light of the legislative enactment, that there is no evidence before this court which would justify the conclusion that the amendatory zoning ordinances, as applied to the properties improved with retail business, are invalid or unconstitutional as a matter of fact.

For the reasons stated, it is my opinion that the petition of the plaintiff and the petition of the cross-petitioning appellees should be denied.