BELL, Appellee,

v.

**ROCKY RIVER BOARD OF ZONING APPEALS, Appellant.**

[Cite as *Bell v. Rocky River Bd. of Zoning Appeals* (1997), 122 Ohio App.3d 672.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71666.

Decided Aug. 11, 1997.

*Michael Bruce Gardner*, for appellee.

*David J. Matty*, Rocky River Director of Law, for appellant.

_____

*Per Curiam.*

This case came on for hearing upon the accelerated calendar of our court pursuant to App.R. 11.1 and Loc.R. 25, the records from the court of common pleas, and the briefs of counsel.

The Rocky River Board of Zoning and Building Appeals prosecutes this appeal from a judgment of the Cuyahoga County Common Pleas Court that reversed the decision of the board, thus allowing Marilyn J. Bell, the owner of property located on Hillard Boulevard in Rocky River, Ohio, to continue her nonconforming use as a gas station.

The record in this case reveals that in 1946, the city of Rocky River issued a building permit to Bell's father, Frank DeMaris, for installation and operation of a gasoline service station on property located at 18545 Hillard Boulevard. Thereafter, he operated a gas station at that location for many years. The parties agree that Rocky River City Council rezoned this property for multifamily residential use subsequent to its authorized gasoline service station use, but permitted continuation of the nonconforming use in accordance with the city's codified ordinances.

Sometime after April 1995, Bell discontinued use of the property as a gas station and removed the underground gasoline storage tanks on two separate dates, June 29, 1995, and August 8, 1995. On August 10, 1995, the State Fire Marshal notified her of unacceptable soil–level contamination in the former location of the tanks that required her to undertake a process of closure, site assessment, and remediation in accordance with R.C. Chapter 3737. During that time, on January 12, 1996, Rocky River Building Commissioner Kevin Beirne notified Bell that the existing service station building had to be demolished and that any future uses of the property had to comply with multifamily residential zoning.

Thereafter, on January 17, 1996, Bell appealed to the board of zoning appeals, which affirmed Beirne's decision and resulted in Bell's further appeal to Cuyahoga County Common Pleas Court. That court, relying on *Supreme Oil Corp. v. Lakewood* (Apr. 29, 1976), Cuyahoga App. No. 34628, unreported, reversed the decision of the board of zoning appeals and ruled that R.C. 713.15, not R.R.C.O. (Rocky River Code of Ordinances) 1165.03(b), controlled the outcome of this case, and found that the board had not shown that Bell intended to abandon the nonconforming use of the property as a gas station for two years.

From that decision, the Rocky River Board of Zoning Appeals brings this appeal to our court and assigns two errors for our review, which we shall consider together:

"I. The city of Rocky River through its charter and adopted ordinance, controls the discontinuation of nonconforming uses within its jurisdiction.

"II. Appellee voluntarily abandoned her nonconforming use."

Essentially, appellant asserts that the court erred in applying *Supreme Oil Corp.* as precedent here because the legislature amended R.C. 713.15 after that decision to allow more local control over nonconforming uses, and also erred in failing to determine that Bell had voluntarily discontinued her nonconforming use.

Bell acknowledges that the legislature amended R.C. 713.15 in 1987, but argues that these amendments do not affect the precedential value of *Supreme Oil Corp., supra,* because the evidence does not demonstrate her voluntary abandonment of the nonconforming use. She also argues that she has the ability to substitute a different nonconforming use at the site without municipal regulation or approval.

The issue then presented for review is whether the trial court erred in relying on *Supreme Oil Corp.* to determine the outcome of this case.

Before considering this matter, it is incumbent upon us to review the Ohio Supreme Court Rules for the Reporting of Opinions. Specifically, S.Ct.R.Rep. Op. 2(G) provides that an unreported opinions may be cited but:

"(1) * * * shall not be considered controlling authority in the judicial district in which it was decided * * * [and]

"(2) * * * shall be considered persuasive authority on a court, including the deciding court, in the judicial district in which the opinion was rendered. Opinions reported in the Ohio Official Reports, however, shall be considered controlling authority for all purposes in the judicial district in which they were rendered * * *."

In *Supreme Oil Corp.,* this court considered the conflict–of–laws question squaring the Lakewood ordinance providing for elimination of a nonconforming

use after one year of discontinuance against the state statute which provided for elimination after a two–year discontinuance. Our court found two significant conflicts: one, the term of use in years materially differed, and, two, the ordinance used the term "abandonment of the use," while the statute required *voluntary* discontinuance.

There, the court stated that "the zoning provisions in question involve a statewide interest, and are not simply a matter of local self-government; that there is a statewide due process interest in preventing local zoning ordinances from retroactively prohibiting nonconforming uses; and that municipal zoning is a police power which must defer to the general legislative enactments of the state." *Id.* at 4. Concluding that the statute, not the ordinance, controlled the case, the court held that although the appellant showed nonuse for more than one year, it had not shown voluntary discontinuation for two years.

We note, however, that since that decision, the legislature has amended R.C. 713.15. It now states:

"[I]f any such nonconforming use is voluntarily discontinued for two years or more, *or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance,* any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code." (Emphasis added.)

We are persuaded, and both counsel to this appeal agree, that R.C. 713.15 as now amended authorizes a municipal corporation by ordinance to reduce the voluntary discontinuance period of a nonconforming use to "not less than six months but not more than two years."

Here, R.R.C.O. 1165.03(b) provides in part:

"Whenever any nonconforming use is discontinued for a continuous period of six (6) months, any future use of such building, or portion thereof so discontinued, shall comply with this Zoning Code."

Accordingly, we conclude that this six–month period conforms with the statewide due process interest in preventing ordinances from retroactively prohibiting nonconforming uses. However, this ordinance does not incorporate the element that the discontinuation be voluntary as mandated by R.C. 713.15. Since a municipal ordinance may not conflict with a general law, to the extent of conflict, the latter is controlling. See Ohio Constitution, Section 3, Article 18.

In conformity with the foregoing analysis and upon examination of the record, we believe that Bell acted voluntarily in removing gasoline storage tanks on two separate occasions from her property, and our conclusion is fortified by the statement contained on page 6 of her brief filed in this court, which states:

"Mrs. Bell does not dispute that she intended to voluntarily discontinue selling gasoline forever."

As argued by her counsel before this court, Bell urges that the city has not demonstrated her intent to abandon the nonconforming commercial use of her property and that her nonconforming gas station use could be changed to a different nonconforming use.

R.R.C.O. 1165.03(a) states:

*"Change or Expansion of Use.* The nonconforming use of a building may only be changed to a conforming use, and the nonconforming use of a part of a building may be not be extended."

In *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 96, 20 O.O.3d 88, 89–90, 420 N.E.2d 103, 106, where a property owner attempted to add a permitted use to a nonconforming use, the court stated:

"[T]he nonconforming use can be regulated for the protection of the public health, safety and general welfare of the community. As we stated in *Columbus v. Union Cemetery* (1976), 45 Ohio St.2d 47, 49 [74 O.O.2d 79, 80, 341 N.E.2d 298, 300–301]:

" 'Uses which do not conform to valid zoning legislation may be regulated, and even girded to the point that they wither and die. *Akron v. Chapman* (1953), 160 Ohio St. 382 [52 O.O. 242, 116 N.E.2d 697], paragraph one of the syllabus; *Curtiss v. Cleveland* (1959), 170 Ohio St. 127 [10 O.O.2d 85, 163 N.E.2d 682]; *Davis v. Miller* (1955), 163 Ohio St. 91, 95–97 [56 O.O. 163, 164–166, 126 N.E.2d 49, 51–53], Taft J. concurring.' "

Further, in *Beck v. Springfield Twp. Bd. of Zoning Appeals* (1993), 88 Ohio App.3d 443, 446, 624 N.E.2d 286, 288, the court stated:

"Owners are permitted to continue a nonconforming use based on the recognition that one should not be deprived of a substantial investment which existed prior to the enactment of the zoning resolution. *Curtiss v. Cleveland* (1959), 170 Ohio St. 127, 132, 10 O.O.2d 85, 87, 163 N.E.2d 682, 686. However, it is recognized that nonconforming uses are not favorites of the law. *Kettering v. Lamar Outdoor Advertising, Inc.* (1987), 38 Ohio App.3d 16, at 18, 525 N.E.2d 836, at 839, states:

" 'The reason for their [nonconforming uses] disfavored position is clear; if the segregation of buildings and uses, which is the function of zoning, is valid because of the beneficial results which this brings to the community, to the extent this segregation is not carried out, the value of zoning is diminished and the public is thereby harmed. Nonconforming uses are allowed to exist merely because of the

harshness of and the constitutional prohibition against the immediate termination of a use which was legal when the zoning ordinance was enacted.' "

Hence, in this case, no basis exists upon which to initiate a new nonconforming use without municipal authorization, controlled by R.R.C.O. 1165.03(a).

In conclusion, the trial court applied the wrong legal standard in determining that "appellee did not show appellant intended to abandon the nonconforming use of the property as a gas station for two years"; incorrectly determined that R.C. 713.15, not R.R.C.O. 1165.03(b), controlled the outcome of the case; and erroneously relied upon an unreported opinion of this court.

Accordingly, we reverse that judgment of the common pleas court and reinstate the decision of the Rocky River Board of Zoning Appeals.

*Judgment accordingly.*

NAHRA, P.J., and O'DONNELL, J., concur.

KARPINSKI, J., dissents.

KARPINSKI, Judge, dissenting.

I respectfully dissent. The right to continued lawful nonconforming use of real property is a well–recognized constitutional and statutory restriction on the exercise of local zoning authority. The majority's opinion to the contrary is not supported by the law or facts, particularly under the exceptional circumstances of this case.

The record shows that the premises in this case were used for approximately fifty years as both a retail gasoline and automobile service station. The property owner's removal and cleanup of leaking underground gasoline storage tanks, deemed by the majority to be "voluntary"—although required by state law—does not establish abandonment of the other preexisting nonconforming use as an automotive service station.[1] As a result, the property owner should be permitted,

---

**1.** The majority states that sometime after April 1995, the premises were not used "as a gas station." The city simply proclaimed abandonment by November, only three months after removal of the last tank, and while the state-mandated cleanup was continuing. The building commissioner's January 12, 1996 letter erroneously contended in support that the tanks had been removed *four years earlier "in 1992."* (No one disputes that the correct date is 1995.) The state fire marshal, moreover, did not even issue the property owner a "no action letter" indicating that the cleanup was completed satisfactorily until January 8, 1996.

The majority applies the R.C. 713.15 state law requirement that discontinuance of a nonconforming use be "voluntary" even though the local ordinance dispenses with this element. However, the majority holds that compliance with mandatory state law governing Underground Storage Tanks, in R.C. 3737.88 *et seq* and Ohio Adm. Code 1301:7–9, is "voluntary."

at an absolute minimum, to continue, without substitution, commercial use of the existing premises as an automotive service station.[2]

Courts usually construe and apply zoning ordinances to nonconforming uses reasonably to avoid constitutional infirmities arising in these circumstances. *E.g., Burt Realty Corp. v. Columbus* (1970), 21 Ohio St.2d 265, 269, 50 O.O.2d 491, 493–494, 257 N.E.2d 355, 358. Although the trial court's opinion may not be flawless, its resolution of these issues is consistent not only with the prior unpublished opinion of this court in *Supreme Oil Corp. v. Lakewood* (Apr. 29, 1976), Cuyahoga App. No. 34628, unreported, but also with substantial authority. See, *e.g., Sun Oil Co. v. Upper Arlington* (1977), 55 Ohio App.2d 27, 9 O.O.3d 196, 379 N.E.2d 266; *Curtiss v. Cleveland* (1957), 110 Ohio App. 139, 12 O.O.2d 415, 146 N.E.2d 323, affirmed as modified (1959), 170 Ohio St. 127, 10 O.O.2d 85, 163 N.E.2d 682. It also has the added virtue of ensuring simple justice and fairness to a citizen caught between two government bureaucracies.

It is both draconian to mandate the complete destruction of an existing commercial building and pure fiction to postulate residential use of the property

---

Even under the theory that the act of removing the underground gasoline tanks was "voluntary," the owner was "involuntarily" delayed from resuming complete use of the property by state-mandated compliance with these comprehensive plan approval, cleanup, and completion requirements. The majority fails to consider whether, in addition to any conflict with R.C. 713.15, the local ordinances also conflict with these comprehensive state UST laws, including time periods for required approvals. See, generally, *Fairview Park v. Barefoot Grass Lawn Serv., Inc.* (1996), 115 Ohio App.3d 306, 685 N.E.2d 300, for a discussion of similar issues.

2. It is not clear whether the property could lawfully be used for some other commercial use. The majority flatly asserts that it cannot. However, the cited cases are distinguishable, and the majority's own opinion dictates a contrary result.

The majority specifically holds that R.C. 713.15 controls when it conflicts with a local zoning ordinance. The final sentence of R.C. 713.15, omitted from the majority opinion, provides as follows:

"The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses *upon such reasonable terms as are set forth in the zoning ordinance.*" (Emphasis added.)

R.R.C.O. 1165.03(a) and 1165.06 conflict with this statute because they absolutely prohibit these required changes to nonconforming uses.

The Ohio Supreme Court in *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 20 O.O.3d 88, 420 N.E.2d 103, immediately after the excerpt quoted by the majority, recognized that unlike the Rocky River ordinances, the Cleveland ordinances permitted such changes under specified conditions. *Id.* at 96, 20 O.O.3d at 89–90, 420 N.E.2d at 105–106. In fact, this court, contrary to the majority opinion, previously invalidated a Cleveland zoning ordinance which left approval of such changes to the unfettered discretion of the zoning board. *Curtiss v. Cleveland* (1957), 110 Ohio App. 139, 12 O.O.2d 415, 146 N.E.2d 323, affirmed as modified (1959), 170 Ohio St. 127, 10 O.O.2d 85, 163 N.E.2d 682. The Rocky River ordinances do not even grant such discretion, and the city did not exercise any, because the ordinances prohibit all commercial changes. Even if it had, the building commissioner believed wrongly that the use had terminated four years earlier. See fn. 1, *supra.*

given its contamination history. Application of the zoning ordinances in this Kafkaesque manner may constitute an unconstitutional taking of property without just compensation. See *Akron v. Chapman* (1953), 160 Ohio St. 382, 52 O.O. 242, 116 N.E.2d 697; *State ex rel. Pitz v. Columbus* (1988), 56 Ohio App.3d 37, 564 N.E.2d 1081.

Compliance with state-mandated cleanup laws should not be used as a guise by local authorities to eradicate nonconforming uses by law-abiding property owners. I am, therefore, unwilling to join the majority.