OPINION
In this consolidated appeal, Defendants-Appellants, Michael and Elizabeth Crawford, appeal their conviction and sentence entered by the Allen County Municipal Court finding them guilty of violating R.C. 519.23, with regard to use of their properties owned in Sugar Creek Township, Allen, County, Ohio, which violated local zoning regulations. On appeal, the Crawfords contend that their use of the properties constitutes a valid nonconforming use established prior to the zoning regulations; moreover, the parties argue that they were selectively prosecuted by the State. However, because the parties' nonconforming use of their jointly owned property was voluntarily discontinued for two years or more, they are no longer protected under a nonconforming use exception to the zoning ordinance. Additionally, no evidence was presented to establish that a nonconforming use existed either prior to or after the zoning resolution's enactment in relation to Michael's individually owed parcel. The selective prosecution claim also lacks merit because the evidence adduced at trial reveals that other similarly situated parties were cited for zoning violations but not prosecuted because they were willing to cooperate with the zoning inspector in order to come into compliance with the zoning regulations, while the Crawfords were not, and no evidence was presented that the State acted in bad-faith.
Facts and procedural history pertinent to this appeal are as follows. In 1981, Michael Crawford opened a bank account for a satellite receiver sales business he planned to conduct from the parties' jointly owned residence located in Sugar Creek Township, Allen County, Ohio. Although sales records are sparse, this business, named M/C Homestead, was apparently active until approximately 1986, when Michael changed the focus of the enterprise to the sale of various machines, engines, and related parts. From 1986 to the present, a large collection of lawnmowers and other small vehicles, such as go-carts, have accumulated on their property surrounding the parties' residence. A company sign was also constructed in front of the Crawford's residence.
In 1987, Michael individually purchased a second parcel of land located near the parties' residence, also in Sugar Creek Township. Since that time, he has continuously stored on that property multiple automobiles, trailers, engines, and scrap metal. This material is exposed, and some is visibly rusted. While Michael would possibly like to sell the articles in the future, his intentions for the use of the property are presently unclear.
In 1988, the Sugar Creek Township Trustees enacted a zoning resolution, converting both of the Crawford properties and surrounding land to a residential district. On March 3, 2000, after several attempts to bring the Crawford properties into compliance with the zoning resolution, two criminal complaints against Michael and one against Elizabeth were filed in the Allen County Municipal Court, alleging that the accumulation of materials on both properties violated the 1988 zoning ordinance and, in turn, R.C. 519.23. Both parties entered pleas of not guilty to all charges, and the matter proceeded to trial on June 29, 2001.
By judgment entry dated October 5, 2001, the trial court found the Crawfords guilty on all charges for violation of R.C. 519.23. At sentencing, the trial court imposed the maximum fine of one hundred dollars for each count; however, Elizabeth's fine was suspended because of the trial court's belief that Michael was primarily responsible for the infractions. From this judgment, the Crawfords appeal, asserting two assignments of error for our consideration.
 Assignment of Error I The trial court erred in not finding that the Sugar Creek Township zoning resolution is inapplicable to the appellants' business as it is a valid non-conforming use of the property.
The Crawfords contend in their first assignment of error that the contested properties do not violate the Sugar Creek Township ("Township") zoning resolution, which limited the use of their property to residential use, because both properties constitute valid nonconforming uses established prior to the resolution's adoption.
The policy considerations allowing continuance of nonconforming uses subsequent to zoning limitations is based upon the "recognition that one should not be deprived of a substantial investment which existed prior to the enactment of [a] zoning resolution."[1] Nonconforming uses are disfavored in the law, however, because the function of zoning is to segregate uses for the beneficial results it brings to communities, and "to the extent this segregation is not carried out, the value of zoning is diminished and the public is thereby harmed."[2]
Absent a valid nonconforming use, the zoning ordinance applicable to this case limits the Crawford properties to residential use, which is defined as:
 "a. Single-family dwellings and buildings accessory thereto but excluding tents, cabins, trailer coaches, mobile homes and basement dwellings. * * *.
 "b. Customary home occupations, as defined in Section II of this Resolution.
 "c. Signs, as regulated by Section 33.07 of this Resolution."
Customary home occupations include those "conducted by immediate resident family members, which [are] clearly incidental and secondary to [a] dwelling's residential use, and [do] not change the character thereof; provided * * * that [they] * * * shall not require internal or external alterations or construction features, equipment, machinery, outdoor storage or signs not customary in residential areas." Because the issues surrounding the individual parcels are distinct in this case, we will address each separately, beginning with the parties' jointly owed property.
The trial court found herein that the Crawfords established a business on their property prior to the Township's resolution limiting land in the area to residential use, which constituted a valid nonconforming use; however, it concluded that any nonconforming use existing prior to the zoning resolution had been discontinued or abandoned pursuant to section5.03 of the Township's 1988 zoning resolution for the amount of time necessary to prohibit a subsequent continuation of the previously valid use. Accordingly, the property was in violation of the residential use limitation and, in turn, the parties were found guilty of violating R.C.519.23, which states, with respect to township zoning ordinances, "no land shall be used in violation of any resolution, or amendment or supplement to such resolution, adopted by any board of township trustees under sections 519.02 to 519.25, inclusive, of the Revised Code."
Consequently, the sole issue raised for this Court to determine is whether the Crawfords' nonconforming use was ongoing without the requisite period of discontinuance. Section 5.03 of the Township's zoning resolution, in pertinent part to the instant case, states the following:
 "Any lawful, non-conforming use which had been discontinued or abandoned shall not thereafter be returned to a non-conforming use. A non-conforming use shall be considered discontinued or abandoned whenever any one of the following conditions exist:
 "a. When the intent of the owner to discontinue or abandon the use is apparent.
 "b. When the use has been discontinued for a period of one (1) year."
Before applying this regulation to the facts herein, however, we must first resolve the conflict-of-law issue between section 5.03 and R.C.519.19. R.C. 519.19 provides:
 "The lawful use of * * * any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use foes not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of said land shall be in conformity with section 519.02 to 519.25, inclusive of the Revised Code. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution."
As written, the Township's zoning ordinance conflicts with the time limitations and findings required for discontinuance of a nonconforming use as established by R.C. 519.19, thus requiring a determination as to which applies to this case.
The authority of townships to enact zoning ordinances is neither inherent nor derived from constitutional provision;[3] instead, the Ohio Legislature, pursuant to R.C. Chapter 519, grants townships the authority, as a police power, to adopt and enforce zoning regulations.[4]
As such, "[t]he zoning authority possessed by townships in the State of Ohio is limited to that which is specifically conferred by the General Assembly."[5] In turn, to the extent a zoning regulation conflicts with or violates an explicit statutory command, it is preempted and unenforceable, making the later controlling.[6]
A local regulation is in conflict with, and is preempted by, a state law only if the local regulation permits what the state law forbids or, in the alternative, forbids what the state law permits.[7] In this case, section 5.03 of the Township's zoning ordinance allows for termination of a nonconforming use if the use has been discontinued for a period of one year or if the owner's intent to discontinue is apparent, which conflicts with the statutory mandate that expressly permits the continuation of nonconforming uses unless the use is voluntarily discontinued for two years or more. In other words, the local resolution forbids that which the statute permits: the continuation of a nonconforming use absent a voluntary discontinuation of use for a period of at least two years. Consequently, R.C. 519.19 controls on the issue of whether the Crawfords discontinued their valid nonconforming use as found by the trial court.
The evidence presented at trial indicates that the Crawfords opened a bank account for M/C Homestead in 1981, and apparently engaged in the sale of satellite receivers at their property until sometime around 1986. Thereafter, the Crawfords began accumulating various kinds of small engines, machinery, and vehicles, including approximately twenty to thirty push and riding lawnmowers, which by the late 1990's covered most of the land surrounding their residence. While Michael Crawford testified that throughout this time he was engaged in selling these items, other testimony revealed that the same items had been there for a number of years and that no customers had ever been witnessed on the property. In April of 2000, the Crawfords received a business summary report from Dunn and Bradstreet, which confirms that in the 315 million yearly payment experiences documented since 1995, none relate to the Crawfords' business. Further testimony indicated that for approximately the last thirty years prior to 1999, Michael Crawford worked for his father over seventy hours per week, including Saturdays. In addition, although documents were admitted into evidence potentially supporting some business activity from 1986 to 1993 and from 1998 to 2000, the evidence was minimal and sporadic; furthermore, no evidence confirms any business whatsoever between 1993 and 1998.
In making our determination, we are guided by the principle that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.[8] Moreover, a reviewing court should not substitute its judgment for the trial court's when there exists some competent, credible evidence supporting the judgment and findings of fact.[9] Accordingly, we conclude that the evidence supports the trial court's determination that the prior valid nonconforming use was discontinued, at minimum, from the early nineties to 1998. Further, the evidence supports that the discontinuation was voluntary, that is, discontinued by the Crawfords' free will and option rather than circumstances beyond their control.[10] As such, with regards to their jointly owed property, the Crawfords' contentions are without merit.
We now turn to discuss the issues surrounding the property individually owed by Michael Crawford. The trial court found that the evidence failed to establish that a valid nonconforming use existed either prior or subsequent to the 1988 zoning resolution. In an action for a zoning violation, the Township has the initial burden of proving a violation.[11] In this case, the fact is not disputed that Michael's use of his property constituted a zoning violation absent contrary proof of a nonconforming use. Thereafter, the landowner claiming the defense of a valid nonconforming use must establish that his nonconforming use existed prior to the enactment of the applicable zoning resolution.[12]
Michael Crawford testified that he purchased the property in 1987, and it is primarily used to store numerous cars and trailers; however, subsequent testimony indicates that while he would possibly like to have an auto sales outlet there sometime in the future, he has no present license to sell cars. Moreover, Michael's additional testimony revealed that he was not sure of his intentions for the use of the property. Further evidence supports that in addition to cars and trailers, the property is used to store scrap metal and other items, which are visibly rusted. Michael stated that a truck located on the property is filled with scrap metal for his alleged business, Ohio Custom and Contracting Hauling, begun in 1999, despite the fact that the truck has remained there for the last year and a half.
From this evidence, the trial court determined that no credible evidence was presented to show the lot was ever a valid nonconforming use. After reviewing the record, we find that the trial court's judgment and findings of fact are supported by competent, credible evidence.
Accordingly, the Crawfords' first assignment of error is hereby overruled.
 Assignment of Error II The means by which the Sugar Creek Township zoning resolution was enforced was a violation of Appellant's constitutional right to equal protection.
In their second assignment of error, the Crawfords aver that the State violated their equal protection rights by selectively prosecuting them for zoning violations. Accordingly, the Crawfords bear the burden of establishing the requisite requirements for a finding of selective prosecution, which include (1) that, while others similarly situated have not generally been proceeded against for conduct of the type forming the basis of the charge against them, they have been singled out for prosecution, and (2) that the government's discriminatory selection of them for prosecution has been invidious or in bad faith.[13] This burden is a heavy one,[14] and a mere showing that another person similarly situated was not prosecuted is not enough; the defendants must demonstrate actual discrimination due to invidious motives or bad faith.[15]
After reviewing the record herein, we determine that the Crawfords failed to establish that they were selectively prosecuted. The evidence adduced at trial indicates that while the Crawfords were the only parties to be prosecuted for zoning violations in their residential area, they were not the only parties to receive zoning violations. The zoning inspector testified that other parties cited for violations were not ultimately prosecuted because they cooperated with the township to achieve compliance with the zoning ordinances, and the Crawfords were unwilling to do so despite repeated requests. Moreover, further testimony indicated that the zoning inspector held no ill will towards the Crawfords and that the prosecution did not proceed on the basis of any personal animosity towards them.
Based upon the foregoing, the Crawfords failed to establish a prima facie case of selective prosecution. Consequently, their second assignment of error is hereby overruled.
Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, the judgment of the trial court is affirmed.
Judgment affirmed.
BRYANT and HADLEY, J.J., concur.
[1] Curtiss v. Cleveland (1959), 170 Ohio St. 127, 132, 10 O.O.2d 85,163 N.E.2d 682.
[2] City of Kettering v. Lamar Outdoor Advertising, Inc. (1987),38 Ohio App.3d 16, 18, 525 N.E.2d 836.
[3] Torok v. Jones (1983), 5 Ohio St.3d 31, 32, 5 OBR 90,448 N.E.2d 819.
[4] Yorkavitz v. Columbia Twp. Bd. of Trustees (1957), 166 Ohio St. 349, 2 O.O.2d 255, 142 N.E.2d 655, paragraph one of the syllabus.
[5] Bd. of Bainbridge Twp. Trustees v. Funtime, Inc. (1990),55 Ohio St.3d 106, 563 N.E.2d 717, paragraph one of the syllabus. See, also, Dsuban v. Union Twp. Bd. of Zoning Appeals (2000),140 Ohio App.3d 602, 608, 748 N.E.2d 597.
[6] Dsuban, 140 Ohio App.3d at 608-09; Funtime, 55 Ohio St.3d 106,108; Cole v. Bd. of Zoning Appeals for Marion Twp. (1973),39 Ohio App.2d 177, 68 O.O.2d 363, 317 N.E.2d 65, paragraph two of the syllabus; Supreme Oil Corp. v. Lakewood (Apr. 29, 1976), Cuyahoga App. No. 34628; Bell v. Rocky River Bd. of Zoning Appeals (1997),122 Ohio App.3d 672, 674-76, 702 N.E.2d 910; Sun Oil Co. of Pennsylvaniav. City of Upper Arlington (1977), 55 Ohio App.2d 27, 35-38, 9 O.O.3d 196, 379 N.E.2d 266. Cf. In re Decertification of Eastlake v. Ohio Bd.of Bldg. Stds. (1981), 66 Ohio St.2d 363, 365, 368, 20 O.O.3d 327,422 N.E.2d 598. See, also, 1984 Ohio Atty.Gen.Ops. No. 84-029.
[7] Village of Struthers v. Sokol (1923), 108 Ohio St. 263, 268,140 N.E. 519.
[8] State v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212, paragraph one of the syllabus; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.
[9] Seasons Coal Co., 10 Ohio St.3d at 80.
[10] Roth v. Steyer (Dec. 19, 1990), Seneca App. No. 13-89-42; BowlingGreen v. Sarver (1983), 9 Ohio App.3d 279, 282, 9 OBR 494,459 N.E.2d 907.
[11] Schmidt v. Barton (Jan. 12, 1977), Summit App. No. 8184; Bd. ofTrustees of Columbia Twp. v. Albertson (Oct. 17, 2001), Lorain App. No. 01CA007785, 2001-Ohio-1510.
[12] Petti v. City of Richmond Hts. (1983), 5 Ohio St.3d 129, 131, fn. 1, 5 OBR 263, 449 N.E.2d 768; Albertson, supra.
[13] State v. Freeman (1985), 20 Ohio St.3d 55, 58, 20 OBR 355,485 N.E.2d 1043.
[14] State v. Flynt (1980), 63 Ohio St.2d 132, 135, 17 O.O.3d 81,407 N.E.2d 15.
[15] Freeman, 20 Ohio St.3d at 58.